JACOB RIDGEWAY *v.* RICHARD S. LUDLAM.

If an agent for the performance of certain services for which a salary or yearly sum is to be allowed him, neglect to keep an account of moneys received by him in his agency, and several annual accounts are settled between him and his principal in which considerable amounts of money previously received by him are omitted to be credited to the principal, and the omission is not supplied until the principal, in consequence of information received from others, makes inquiry of the agent in reference thereto, the salary or yearly sum for the years in which such omission occurred should be disallowed.

The bill states that in the year 1822, Jacob Ridgeway, the complainant, was the owner of several large tracts of land in the County of Cape May, principally wood-land, and on which was growing a large quantity of timber, and trees calculated for making cord wood, saw stuff, and other lumber; having also, thereon two saw-mills; one tract, called the East Creek Tract, containing upwards of 5000 acres; another, called the David Johnson Tract, containing about 700 acres; and three others, near Goshen, called the Green and Beaver Dam Tracts, containing about 600 acres. That in the year 1822, he agreed with Richard S. Ludlam, the defendant, and appointed him his agent and bailiff, and placed the said lands, saw-mills and appurtenances in his care and charge, to preserve the same from the trespasses of others, and from time to time, as directions should be given by him, the complainant, to cut the timber on said tracts into cord wood and lumber, and send the wood and lumber to him, or elsewhere, as he should direct. That the said Ludlam, being engaged in storekeeping, and residing near the East Creek Tract, and as he could pay for the cutting and carting the wood and lumber out of his store, and receive the cash from the complainant, and thereby make a profitable business for himself, accepted the said agency and charge, for the purposes aforesaid; for which services the complainant agreed to allow him $150 a year, and pay him for the wood cut on the tracts near Goshen; and placed upon the landing, $1,50 per cord; and for the oak wood cut on the East Creek Tract and carted to the landing $2

per cord; and for the pine wood $1,75 per cord; and $5,93 per 1000 feet for the boards, scantling, and other sawed lumber,, when put upon the landing.

That, accordingly, in the year 1822, Ludlam took the charge and care of the said lands, saw-mills and appurtenances, as the complainant's agent, upon the said terms, and so continued until May 1839 ; during which time he cut and caused to be cut, annually, great quantities of cord wood, ship timber, boards, scantling, hoop poles, and other kinds of lumber, part whereof was sent and delivered to the complainant, part sold by Ludlam to other persons and the price thereof paid to Ludlam ; and that Ludlam also received from sundry persons divers sums of money for sawing done for them at the said mills ; and also sawed at the said mills large quantities of lumber belonging to him, Ludlam, for the sawing of which he should have accounted to the complainant; and also cut and appropriated to his own use ship timber and other lumber upon the said tracts.

That Ludlam, annually, from the time he accepted the said agency to Feb. 1839, and about the month of January in each year, exhibited to the complainant an account of the wood and lumber cut upon the said tracts, but which the complainant has recently discovered are not correct, and do not contain an account of all the wood and lumber cut and sold from the said tracts, and of the sawing done at the said mills, and money received by Ludlam ; and, especially, that the accounts since the year 1833 contain but a small part of the wood and lumber cut and sold since that period, and which was not discovered by the complainant until about the middle of May 1839, when the complainant ascertained that large quantities of wood and lumber, without the directions of the complainant, had been cut and sold by Ludlam, and for which he had received the money and not rendered any account thereof to the complainant; and that a large quantity had been cut and unaccounted for that remained unsold.

That, on such discovery, the complainant called on Ludlam for a further and full account of his said agency ; and, after repeated applications, Ludlam, in Dec. 1839, furnished an additional account of wood and lumber sold by him in 1837, 1838

and 1839, whereby it appears that 1367 cords of oak wood, 2538 cords of pine wood, not before accounted for, had been sold by him, at a price far below its value, and the money received therefor during the said years ; all which was cut without the order, direction, or knowledge of the complainant; and, after deducting all expenses, leaving a balance due the complainant of $3,105 81 ; but no account is given of any other kind of lumber except a few hoop poles; and no account is given of the whole amount of wood and other lumber cut upon the said premises during his agency, and particularly since 1833, which the complainant particularly requested ; and, upon being called upon for further and full accounts of all wood and other lumber cut during his agency, and especially since 1833, Ludlam positively refuses to give any other account, alleging the accounts already furnished to be full and true accounts ; whereas the complainant charges that the accounts rendered do not show or pretend to show the amount of wood and lumber cut, but contain many errors. That the said accounts show but about 15,000 cords ; whereas the complainant has been informed and believes and charges that the defendant has cut, during his said agency, more than 25,000 cords of wood, besides a large quantity of ship timber, boards, plank, scantling, cedar rails, hoop poles, and other lumber.

The bill prays an account of all the cord wook, ship timber, hoop poles, lath, boards, scantling, rails and other lumber, annually got or cut by the defendant during his agency, designating the quantity of each kind of wood and lumber, and showing how he has disposed of it ; and an account of the wood, trees, scantling, ship timber and other lumber cut by him and appropriated to his own use, and the value thereof ; and an account of the quantity of lumber sawed at the mills, during his agency, out of his own timber, and what amount was sawed for other persons, and what amount was received by him ; and an account of all moneys received by him during his agency ; and that Ludlam may be decreed to pay what, upon taking the said accounts, shall be found to be due the complainant.

The defendant answered the bill, Feb. 24th, 1841, admitting his agency of the said lands and saw-mills ; stating that there

was no specific agreement as to the price he was to have for cutting ; that he was to have the market price for cutting and carting.

He says he had directions from complainant to make sale of all wood, timber, lumber and materials upon the premises ; and that he has rendered a fair and honest account of all the wood, lumber and property sold by him, from year to year, by crediting the amount and value thereof in his, the defendant's books ;. and has rendered the same account to the complainant at the close of every year. That he has no account of the amount of his own timber sawed at complainant's mills during his agency. That his timber was taken to the mills and sawed in the same way as that of others who had sawing done there ; and he took the sawyer's account of all sawing done at the mills ; which account included the work done for all persons who took timber there as well as the sawing done for him ; and the whole was regularly accounted for with the complainant. That he cut a portion of ship timber for his own use, for which he rendered an account, but cannot state the precise amount now. He sold the frame for a sloop for about $100, which has been accounted for, and which he had a right to sell under his general instructions as agent of complainant.

That the manner of transacting the business precludes, and has at all times prevented him from rendering any specific account of the amount of lumber, wood, hoop poles and materials cut, sawed and done for the complainant, other than the account furnished by the complainant himself. That the wood was cut and sent to the complainant in Philadelphia, and he received the corder's bills and account of the quantity delivered ; which bills specified the description, quality and number of cords ; this was the only means of ascertaining the quantity; and the complainant and he settled by the bills of the corders, and in no other way, as the books and accounts kept by the complainant will show. The practice was for the complainant to acknowledge the delivery of the wood in Philadelphia ; the number of cords of each description was then charged to him. The same mode of proceeding was pursued in regard to the lumber, hoop poles, and whatever property was sent, as the letters, receipts and pa—

pers of the complainant will show. At the close of the year these vouchers were produced, compared with the complainant's books, and the transactions of the year settled, as far as they could be, leaving a large quantity of wood and lumber on hand.

That in the years 1837-8 he, having other engagements, turned over his agency to William Townsend, a highly respectable and trustworthy person. That he informed the complainant of the employment of Townsend, and the complainant sanctioned the agency of Townshend by giving him directions from time to time, and receiving from him wood, lumber and property in the same manner as he transacted the business with the defendant; and it was during this time that the discrepancy appears in the accounts. A large amount of wood had been cut by Townsend and not sent forward to the complainant; and when the defendant was called upon to examine the wood he estimated the quantity as near as he could, and obtained an account from Townsend which he sent to the complainant; and this defendant had no other way of rendering the said account.

He says that all the accounts he has rendered to the complainant, both in the debt and credit, are just and true accounts and he cannot render any other. That all accounts were settled up to the year 1834. They were compared with the books of the complainant and with the vouchers of the defendant; and were, as he supposed, finally closed up and settled to the entire satisfaction of all parties. After the lapse of so long a time it is impossible for him to render the accounts without the aid of the complainant's books. And although he is willing to come to an account with the complainant from the beginning of his agency if the court shall so direct, yet he insists he is not bound to render an account of his agency prior to such settlement when many of the vouchers and memoranda upon which such settlement was amicably made may be lost or destroyed, unless the complainant can show some error or fraud in the said settlement; nor has he the power to render any account other than such as have already been submitted to the complainant and which have been derived from his books as before stated.

That he has annexed to this answer a general account made up from such materials as are in his power at the present time,

and which has been derived originally from the books, papers, vouchers and memoranda.

He says there is a quantity of wood still upon the premises, cut under 'the direction of and paid for by this defendant, and which he claims a right to charge against the complainant when the quantity shall be ascertained in the usual way. He also claims to be allowed for bad debts for property sold, for sawing, and for lumber sold, in the course of his agency, which debts are lost without any fault or neglect of his. He says he is ready and hereby submits to account with the complainant under the order of the court, when all the accounts of the complainant and this defendant can be settled upon the producing before the proper officer the books, vouchers and papers, as well of this defendant as of the complainant.

A replication was filed.

On the 14th of October, 1841, an order was made referring it to Richard W. Howell, a master, to take an account of all the dealings and transactions between the complainant and the defendant, and of all the wood, timber, rails, poles and lumber of every description, got, cut or sawed by the defendant or by his directions, on the said premises, and of his disposition thereof and his disbursements respecting the same, making to each party all just allowances ; and that for the better taking of the said account the said parties be examined upon interrogatories before the master, and produce all books and papers in their custody or power, relating thereto, upon oath or affirmation before the master as he shall direct ; and that the parties be at liberty to apply to the court as occasion shall require, and that all further equities between the parties be reserved.

The parties were both examined before the master upon interrogatories, and witnesses were also examined before the master.

The Master made a report, stating the account between the parties, allowing to the defendant the stipulated yearly sum of $150—up to and including the year 1839, and charging the de-

fendant with such receipts as he thought there was sufficient evidence to charge him with.

The report was excepted to on the part of the complainant, on two grounds. First, that in view of the facts appearing in the case, showing unfaithfulness in the defendant in his said agency, no allowance should have been made to the defendant on account of such stipulated yearly sum as compensation for his agency. Second, that under the proofs in the case the Master should have made a general charge of damages against the defendant beyond the charges made against him in the report for wood and timber cut and sold and not accounted for.

*R. P. Thompson* and *J. Q. C. Elmer* in support of the exceptions.

*Jeffers* contra.

THE CHANCELLOR. If an agent for the performance of certain services for which a salary or yearly sum is to be allowed him, neglect to keep an account of moneys received by him in his agency, and several annual accounts are settled between him and his principal, in which considerable amounts of money previously received by him are omitted to be credited to the principal, and the omission is not supplied until the principal, in consequence of information received from others, makes inquiry of the agent in reference thereto, the salary or yearly sum for the years in which such omissions occurred should be disallowed.

Perhaps the order of reference should have directed the Master to inquire as to the faithfulness of the defendant as agent, and whether he was entitled to the salary or yearly sum or not. But that question might yet be referred. I think that the Master, on the same ground on which he disallowed the yearly compensation for 1839, should have disallowed it also for the years 1837 and 1838.

The other exception to the report is in this general form : that the Master did not charge the the defendant $25,000 or some other large sum for spoliation and waste of property committed by the defendant during his agency. The reference to the Master was to take the accounts. The Master has charged to the

agent all receipts by him of which sufficient evidence was given. A general claim for damages, founded on a probability or even something stronger, that more wood must have been cut, without sufficient proof thereof to enable the Master to charge for it would not authorize a charge on the account.

The first exception is sustained.